IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

NATALIE COKER and JOSEPH D. HAYMOND, )
)
    Plaintiffs, )
)
v. ) Case No. 3:03-0095
)
UNITED STATES OF AMERICA, ) Judge Thomas A. Wiseman, Jr.
)
    Defendant. )

## MEMORANDUM OPINION

Before the Court are two motions. The first is the Defendant's Motion to Dismiss the one remaining claim in this case, Plaintiffs' negligence claim, for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Doc. No. 27.) The Defendant filed a Memorandum of Law in support of its motion (Doc. No. 28); Plaintiffs filed a Response in opposition to the motion (Doc. No. 31), and the Defendant has filed a Reply brief (Doc. No. 39). The motion has been fully briefed and is ripe for consideration.

Also before the Court is Plaintiffs' Motion for Summary Judgment (Doc. No. 30). Plaintiffs did not file a separate Memorandum in support of their motion, but instead rely upon their Response in opposition to Defendant's Motion to Dismiss (Doc. No. 31). The Defendant has filed a Response in opposition to Plaintiffs' Motion (Doc. No. 34), in which it points out that Plaintiffs' Motion contains nothing but conclusory statements of law and that Plaintiffs failed to comply with the local rules of court in that they did not file a statement of material undisputed facts supported by specific citations to the record.[1]

Irrespective of the defects in Plaintiffs' motion, the Court finds that it lacks subject-matter jurisdiction over this case and therefore must GRANT Defendant's motion to dismiss without reaching the merits of Plaintiffs' motion for summary judgment. Defendant's motion is, in effect, a motion for reconsideration, because the Court already considered and denied Defendant's original motion to

---

[1]Plaintiffs subsequently filed an "Addendum to Plaintiffs' Motion for Summary Judgment" (Doc. No. 40) which purports to set forth a Statement of Undisputed Facts, but the Statement still does not comply with Local Rule 8, as the purported facts are not supported by citations to the record. See Local Rule 8(b)(7)(b).

dismiss Plaintiff's negligence claim on jurisdictional grounds. Upon closer examination and reconsideration, however, the Court finds that Defendant's motion is meritorious and must be granted, for the reasons set forth below.

## I.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject-matter jurisdiction. Defendant here presents a facial attack on the subject-matter jurisdiction alleged in the complaint based upon the sufficiency of the pleading. In reviewing such a facial attack, a trial court takes the plaintiff's allegations in the complaint as true, as it would in considering a Rule 12(b)(6) motion to dismiss. United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994); Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir.1990).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

According to Plaintiffs' Complaint, Plaintiffs Natalie Coker and Joseph D. Haymond are licensed pharmacists residing in Rutherford County, Tennessee, and are both employees of the United States Department of Veterans Affairs. At all times relevant to the Complaint, Haymond served as Director of the Consolidated Mail Outpatient Pharmacy 764 ("CMOP") and was Coker's direct supervisor at the CMOP. They filed their complaint in Rutherford County Circuit Court on December 12, 2002, naming Pamela J. McGuire-Mersch ("McGuire") and Ronald Bednarz ("Bednarz") as defendants. Plaintiffs claim that McGuire and Bednarz, who are likewise employees of the Department of Veterans Affairs, transmitted, caused to be transmitted, auto-forwarded and permitted to be auto-forwarded to thousands of persons an electronic message ("e-mail") containing several false and defamatory statements about the Plaintiffs.

More specifically, it appears McGuire, on or about January 1, 2002, responded to an e-mail from Bednarz that had as its subject line "Weekly Management Reports." In her e-mail to Bednarz, McGuire kept the same subject line, and in the body of the message allegedly made several false and defamatory statements about Plaintiffs. McGuire apparently intended the e-mail to be seen only by Bednarz. Unbeknownst to her, however, Bednarz, as manager of the "Acquisitions Weekly Management Reports" e-mail group, had an e-mail "rule" set up to forward automatically any messages

2

he received with the phrase "Weekly Management Report" in the subject line, to a server group consisting of all Department of Veterans Affairs Acquisition and Materiel Management personnel. As a result, when Bednarz received the e-mail from McGuire, it was automatically forwarded to all persons in that server group. In their Complaint, Plaintiffs allege that they suffered damages as a result of the nationwide dissemination of the e-mail containing the allegedly false and defamatory statements about them, and asserted causes of action for negligence, gross negligence or recklessness (Count One), false light invasion of privacy (Count Two), and defamation/libel per se (Count Three).

The United States, by and through the United States Attorney for this district, removed the case to federal court and moved to substitute the United States as a defendant on the basis that McGuire and Bednarz were federal employees acting within the scope of their employment at the time of the incident giving rise to suit. The Court granted that motion and dismissed the claims against the individual defendants. (Doc. No. 5.)

At the same time it filed the Motion to Substitute, Defendant also filed its first Motion to Dismiss, which was granted in part and denied in part. Specifically, the Court granted Defendant's motion to dismiss Plaintiffs' claims of false-light invasion of privacy, defamation and libel per se on the grounds that such claims are barred under the Federal Tort Claims Act ("FTCA"). (See Doc. No. 21.) Although the Defendant argued that Plaintiffs' negligence claim was simply a defamation claim dressed up as a negligence claim and therefore also barred by 28 U.S.C. § 2680(h), the Court denied Defendant's original motion to dismiss the negligence claim on the grounds that the FTCA waives the Government's immunity from suit for negligence. However, pursuant to the Magistrate's Order granting permission to do so (Doc. No. 23), Defendants filed their present Motion to Dismiss the remaining negligence claim again on the basis of lack of subject-matter jurisdiction under 28 U.S.C. § 2680(h).

### III. DISCUSSION

"The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). The Federal Tort Claims Act functions as a waiver of some of the United States' sovereign immunity, as it generally authorizes suits against the United States for damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of

3

any federal government employee acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b); see Rich v. United, 119 F.3d 447, 449–50 (6th Cir. 1997).

Even within that framework, however, there are numerous exceptions to the government's waiver of its sovereign immunity. For example, the waiver does not apply to "any claim *arising out of* assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h) (emphasis added). If a claim falls within one of the exceptions listed in § 2680(h), then the district court lacks subject-matter jurisdiction and must dismiss the claim. Satterfield v. United States, 788 F.2d 395, 400 (6th Cir. 1986). Section 2680(h) is often referred to as the "intentional tort" exception, see, e.g., Hartwig v. United States, 80 F. Supp. 2d 765, 768 (N.D. Ohio 1999), though it clearly pertains to claims for negligent misrepresentation and negligent defamation as well. See United States v. Neustadt, 366 U.S. 696, 701–02 (1961) (holding § 2680(h) barred claims for negligent misrepresentation).

Defendant maintains that although Plaintiffs style their cause of action as one for negligence, gross negligence, or recklessness, it is in reality a claim for libel, slander or misrepresentation and is therefore barred by the intentional tort exception. (See Doc. No. 28.) For their part, Plaintiffs contend that "[t]he tort of defamation was committed when the libelous e-mail was communicated from McGuire to Bednarz, utilizing VA computer facilities" (Doc. No. 31, ¶ 3), but that "the same injury can arise from more than one wrongful act" (Doc. No. 31, ¶ 2). Thus, their negligence claim is purportedly based upon allegations that Bednarz and McGuire "negligently and recklessly disregarded the Defendant's published policies regarding the usage of e-mail," and that "the serious injury inflicted upon the Plaintiffs was the direct and proximate result of at least three separate negligent acts . . . : (1) McGuire's negligent introduction of the [e-mail] into the VA electronic mail system; (2) Bednarz's negligent programming of his electronic mail-box to automatically forward incoming items without review; and (3) the overarching negligent disregard, by both McGuire and Bednarz, of the VA's published cyber-security polices and procedures." (Doc. No. 31, ¶¶ 2, 3, 4.)

To establish a prima facie case of defamation in Tennessee, which is where the alleged acts or

4

omissions occurred, see 28 U.S.C. § 1346(b), the plaintiff must show that: "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." Sullivan v. Baptist Mem. Hosp. 995 S.W.2d 569, 571 (Tenn. 1999) (citing Restatement (Second) of Torts § 580 B (1977)). The publication itself does not need to be knowing or intentional: "A person who harms another by publishing a false defamatory communication concerning him may have intended the result, may have been either reckless or negligent in bringing it about, or may have been without fault in this regard." Restatement (Second) of Torts § 580 B, cmt. b. In addition, under Tennessee law, a plaintiff is required to prove actual damages in any defamation case. Myers v. Pickering Firm, Inc., 959 S.W.2d 152, 164 (Tenn. Ct. App. 1997).

Here, Plaintiffs attempt to distinguish between the factual elements supporting their negligence claim as opposed to their defamation claim by pointing to the discrete acts of negligence that purportedly harmed them. Plaintiffs do not allege that they suffered any injury resulting from the alleged negligence separate and apart from the injury suffered as a result of the defamation, however. To the contrary, the damages alleged in association with each of the causes of action set forth in the Complaint are identical. Plaintiffs simply claim that, as a result of the "transmission of the aforementioned defamatory and slanderous e-mail" (Compl. ¶ 20), they suffered mental and emotional anguish, injury to their personal and professional reputations, and monetary damages as a result the harm to their professional reputations. (Compl. ¶¶ 21, 28, 34.)

Thus, it is apparent from the face of the Complaint that if the alleged negligence caused any harm to Plaintiffs, it is solely because it resulted in the broad dissemination or publication of McGuire's e-mail. Plaintiffs' factual allegations in support of their defamation claim are that Bednarz and McGuire together negligently caused the nationwide publication of statements that they allegedly either knew to be false and defaming or the truth of which they negligently or recklessly failed to ascertain. Without their negligence, no publication to the broader audience would have occurred, and without such publication, no harm could have accrued to Plaintiffs and no claim for defamation would have arisen.[2]

---

[2]Moreover, the communication of the e-mail from McGuire to Bednarz alone was not sufficient to support a cause of action for defamation, since Plaintiffs do not allege any harm or injury arising solely from that communication. As set forth in their Complaint and clarified in subsequent court filings, Plaintiffs' alleged damages all arose in connection with the allegedly nationwide dissemination of that e-mail.

5

The question presented, then, is whether Plaintiffs' allegations concerning the negligent causes of their injury are controlling for FTCA purposes, or whether the actual injury alleged is determinative. Case law from this Circuit and elsewhere has answered that question unequivocally. "In determining whether a complaint states a claim falling within any of the exceptions [under the FTCA], the substance of the plaintiffs' claim, and not the language used in stating it, is controlling." Moffitt v. United States, 430 F. Supp. 34, 37 (E.D. Tenn. 1976). The crucial issue is not whether the plaintiff frames his claim in terms of negligence, but whether Congress intended to bar this type of suit, under whatever legal theory brought, by expressly limiting the waiver of governmental immunity in the FTCA. Id., cited in Jackson v. United States, 24 F. Supp. 2d 823, 831 (W.D. Tenn. 1998). Thus, "the exceptions in the FTCA are not limited to the torts specifically named therein, but rather encompass situations where the underlying governmental conduct which constitutes an excepted cause of action is essential to plaintiff's claim." O'Ferrell v. United States, 253 F.3d 1257, 1265–66 (11th Cir. 2001) (quoting Metz v. United States, 788 F.2d 1528, 1534 (11th Cir.1986)). In this case, the gravamen of Plaintiffs' claims is the dissemination or publication of allegedly defamatory material. Negligence is merely the vehicle by which the allegedly defamatory information was published. Accordingly, the claims are barred by 28 U.S.C. § 2680(h).

While there is no Sixth Circuit case law specifically on point, the facts in Talbert v. United States., 932 F.2d 1064 (4th Cir. 1991), are closely analogous to those presented here and support this result. In that case, the plaintiff brought suit under the FTCA alleging that his former employer, the United States Department of Commerce, had negligently maintained his personnel records, which according to plaintiff contained "considerable contradictory, erroneous information and the false assertions of management." Id. at 1065. After his administrative claim for "negligent maintenance of his employment records" was denied, plaintiff brought suit against the United States under the FTCA, seeking damages "for lack of due care in keeping and maintaining [his] employment records" and alleging that, "[a]s a result of this negligent maintenance of his records, [he] has suffered damage to his reputation which has denied him employment and prospective employment." Id.

The Fourth Circuit affirmed the district court's dismissal of plaintiff's claim on the grounds that any injury to him would necessarily require communication of the allegedly defamatory information in his records,

6

so his claim was barred by the libelous statement exception to FTCA, 28 U.S.C. § 2680(h). Citing the Restatement of Torts, the court noted that "liability for the tort of defamation—which includes libel and slander—exists if there is '(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.' " Id. (quoting Restatement (Second) of Torts, § 558 (1977)). Thus, despite the plaintiff's insistence that the gravamen of his claim was "the actionable breach of a duty to use reasonable care in maintaining the accuracy of his personnel records," and not the communication of defamatory material, the Court disagreed, stating:

> To recover for negligence, . . . a plaintiff must allege the existence of an injury caused by the defendant's conduct as well as the breach of a duty. In cases such as these, it is the *communication* that causes the injury. Indeed, the only injury to which [plaintiff] points is the "damage to his reputation which has denied him employment and prospective employment." Plaintiff does not specifically allege how this damage to his reputation occurred. We may only assume that it occurred through the unprivileged publication of allegedly false information in [plaintiff's] personnel file to third parties, particularly to prospective employers. Because the damages [plaintiff] alleges appear to flow from past or future communication of the contents of the personnel files and the resulting injury to [plaintiff's] reputation, the gravamen of [his] negligence claim is the government's communication of untrue statements about [him]. Artful pleading cannot alter the fact that his claim resound[s] in the heartland of the tort of defamation: the injury is to reputation; the conduct is the communication of an idea, either implicitly or explicitly. As such, [plaintiff's] claim is barred under § 2680(h) of the FTCA.

Id. at 1066–67 (footnote and internal citations and quotation marks omitted); cf. Moessmer v. United States, 760 F.2d 236, 237–38 (8th Cir. 1985) (dismissing similar claim on similar grounds).[3]

The same reasoning applies here. As was the case in Talbert, it is the *communication* that caused Plaintiffs' injury. McGuire's and Bednarz's alleged negligence served to satisfy one necessary element of the cause of action for defamation: publication of the communication to third parties. To paraphrase the Fourth Circuit: Because Plaintiffs' alleged damages "appear to flow from past or future communication of the contents of the [e-mail] and the resulting injury to [Plaintiffs'] reputation, the gravamen of [their] negligence

---

[3]But see Quinones v. United States, 492 F.2d 1269 (3d Cir. 1974). There, the Third Circuit allowed a claim for negligent failure to maintain accurate employment records. The court distinguished between a claim for negligent maintenance of records and one for the dissemination of inaccurate information, holding that § 2680(h) barred only the latter.

7

claim is the government's communication of untrue statements about [them]. Artful pleading cannot alter the fact that [their] claim resound[s] in the heartland of the tort of defamation: the injury is to reputation; the conduct is the communication of an idea, either implicitly or explicitly. As such, [plaintiffs'] claim is barred under § 2680(h) of the FTCA." Talbert, 932 F.2d at 1066–67. See also O'Ferrell, 253 F.3d at 1265–66 (11th Cir. 2001) (affirming dismissal of claims arising from alleged defamation, despite plaintiffs' contention that they claimed "damage flowing directly to them in the form of mental anguish as a result of their personally hearing and reading the false statements" and thus that their negligence claim did not "fall[] in the realm of a claim of damage for injury to reputation"). Accord Neustadt, 366 U.S. at 703 (1961) (holding that claim against the Federal Housing Administration ("FHA") for negligence in inspecting and appraising a home, upon which appraisal plaintiffs relied in purchasing the home for a price in excess of the fair market value, although framed in terms of negligence was in actuality one for negligent misrepresentation, which was barred by 28 U.S.C. § 2680 (h)).

Plaintiffs' citation to Block v. Neal, 460 U.S. 289, 296–97 (1983), is inapposite. In that case, the plaintiff alleged that she obtained a loan from the Farmers Home Administration (FmHA) for the construction of a house. Her contract with a builder to construct the house required that the work conform to plans approved by FmHA and granted FmHA the right to inspect and test all materials and workmanship and reject any that were defective. During and at the completion of construction of the house, the FmHA inspected the house and reported that the construction accorded with FmHA-approved drawings and specifications. Only after the plaintiff moved into the house did she discover a number of defects, which the builder refused to correct and for which the FmHA refused to pay. The plaintiff brought suit under the FTCA alleging that the defects to the house were partly attributable to FmHA's failure properly to inspect and supervise construction. The Court held that plaintiff's claim was not subject to dismissal as a claim "arising out of . . . misrepresentation," and therefore was not barred by 28 U.S.C. § 2680(h).

Although the plaintiff alleged the FmHA had made misstatements about the soundness of the house, the Court expressly distinguished the facts before it from those in Neustadt on the basis that the plaintiff did not seek to recover on the basis of any alleged misstatements. 460 U.S. at 296–97 ("The gravamen of the action against the Government in Neustadt was that the plaintiff was misled by a 'Statement of FHA

8

Appraisal' prepared by the Government. Neustadt alleged no injury that he would have suffered independently of his reliance on the erroneous appraisal. Because the alleged conduct that was the basis of his negligence claim was in essence a negligent misrepresentation, Neustadt's action was barred under the 'misrepresentation' exception."). In Block, by contrast, the plaintiff alleged that "FmHA officials voluntarily undertook to supervise construction of her house; that the officials failed to use due care in carrying out their supervisory activity; and that she suffered some pecuniary injury proximately caused by FmHA's failure to use due care." Id. at 297. Thus, although the FmHA "may have undertaken both to supervise construction of [plaintiff's] house and to provide [her] with information regarding the progress of construction, [the cause of] action [was] based solely on the former conduct," and was, therefore, permissible under the FTCA. Id. at 299.

The same is not true here. Plaintiffs do not allege any separate injury arising from the alleged negligence independent of that suffered as a result of the nationwide publication of the allegedly defamatory statements. Moreover, as indicated above, the acts that Plaintiffs claim constituted negligence, gross negligence or recklessness on the part of the VA's employees actually gave rise to the publication of the allegedly defamatory statements, and thus form an indispensable component of the basis for Plaintiffs' claim for defamation, which has already been dismissed.

Accordingly, the Court finds that it must dismiss Plaintiffs' remaining claim for lack of subject-matter jurisdiction, pursuant to 28 U.S.C. § 2680(h), on the basis that the claim is, in substance, one for defamation. Because the Court has determined that it lacks jurisdiction, it does not reach the merits of Plaintiffs' Motion for Summary Judgment. See Fed. R. Civ. P. 12(h)(3); Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quotation omitted); Bauer v. RBX Industries, Inc., 368 F.3d 569, 581 (6th Cir. 2004).[4]

---

[4]The Court also notes, but without reaching the merits of the issue, that Plaintiffs failed to allege facts in their Complaint showing that they exhausted their administrative remedies prior to filing this suit. Exhaustion of remedies is a jurisdictional prerequisite to suit under the FTCA. See 28 U.S.C. § 2675(a). Although Defendant did not raise the issue as a defense, the Sixth Circuit has repeatedly held that the requirement that a claimant exhaust her administrative remedies before filing a civil action under the FTCA

9

**IV. CONCLUSION**

For the reasons set forth above and for good cause shown, the Court hereby grants Defendant's Motion to Dismiss and dismisses Plaintiffs' Complaint in its entirety. Because of this dismissal, the Court does not reach the merits of Plaintiffs' Motion for Summary Judgment.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge

---

is a valid jurisdictional requirement, not capable of waiver or subject to estoppel. Conn v. United States, 867 F.2d 916, 918 (6th Cir. 1989); Garrett v. United States, 640 F.2d 24, 26 (6th Cir. 1981); Executive Jet Aviation, Inc. v. United States, 507 F.2d 508, 515 (6th Cir. 1974). Because the Court dismisses on other jurisdictional grounds, it does not find it necessary to reach the question of exhaustion.

10